# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF GEORGIA

# COLUMBUS DIVISION

| | | |
|---|---|---|
| PATRICIA C. COLEY, | * | |
| Plaintiff, | * | CIVIL ACTION FILE NO.: |
| v. | * | 4:17-00040-CDL-MSH |
| COMMISSIONER OF SOCIAL | * | |
| SECURITY, | * | |
| Defendant. | * | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HER COMPLAINT TO OVERTURN THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

COMES NOW, the Plaintiff, by and through her counsel of record and in accordance with this Court's Order of August 4, 2016 and Rule 6 of the Federal Rules of Civil Procedure files this her Brief in Support of Her Complaint to Overturn the Decision of the Commissioner of Social Security and shows as follows:

1.

On November 12, 2012, the claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 2,

2011.[1]  The claim was initially denied on January 7, 2013[2] and upon reconsideration on June 17, 2013 was again denied.[3]  Claimant filed a written request for a hearing on August 2, 2013.[4]  Over 21 months later, on May 15, 2015, a video hearing was held in this matter.  Administrative Law Judge Walter V. Lassiter, Jr. presided over the hearing.[5]  Judge Lassiter appeared agitated and evidenced an animus toward both the Claimant and her Attorney from the moment the hearing commenced.[6]   He expressed anger that medical records had been filed a short time before the hearing was to commence, although such filing was entirely allowed under applicable law and due to no failure on the part of Claimant or Claimant's Attorney to timely acquire said records.[7]  Judge Lassiter directed a series of unwarranted criticisms at Claimant's Attorney bordering on unprofessional conduct.[8] After the harangue directed primarily at Claimant's Attorney, Judge Lassiter assured Claimant that this would not impact his decision.[9]  It seemed apparent from the first few minutes of the proceeding that Judge Lassiter would be anything but impartial in making his determination.

2.

---

[1] Doc # 7-6, Exhibit 1D, 239-243.
[2] Doc # 7-4, Exhibit 1A, 160-164.
[3] Doc # 7-4, Exhibit 3A, 166-172.
[4] Doc # 7-5, Exhibit 7B, 186-187.
[5] Doc # 7-5, Exhibit 12B, 206-232.
[6] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 123.
[7] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 124-125.
[8] Id.
[9] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 125.

Claimant agrees there is a five-step process to determine whether or not she is qualified to receive benefits under her Claim.[10]  Claimant and Judge Lassiter agree she did not engage in substantial gainful activity during the period that is the subject of her claim,[11] satisfying the first step in the process.

3.

Claimant and Judge Lassiter agree she had a medically determinable impairment that is "severe" under relevant federal law.[12]  Judge Lassiter seems to suggest that only Claimant's impairments in combination would be considered "severe" under relevant federal law.[13]  Claimant would note that her reported impairments in combination or standing alone would satisfy step two of the process.  Regardless, there is no dispute that Claimant meets both step one and step two of the required disability analysis.[14]

4.

Incredibly, after admitting the range of severe impairments which Claimant has and continues to suffer from to this very day[15], Judge Lassiter opines that the severity of her impairments do not meet the requirements under step three.[16]  He states that

---

[10] 20 CFR 404.1520(a).
[11] Doc # 7-3, "ALJ Hearing Decision", 104-119, 109.
[12] 20 CFR 404.1520(c).
[13] Doc # 7-3, "ALJ Hearing Decision", 104-119, 109.
[14] Doc # 7-3, "ALJ Hearing Decision", 104-119, 109.
[15] Specifically, Septic thrombophlebitis, pulmonary embolism, degenerative lumbar disc disease, shortness of breath, deep vein thrombosis, edema, osteoarthritis, pulmonary hypertension, malignant melanoma, sleep apnea, MRSA, obesity, and hypertension.
[16] Doc # 7-3, "ALJ Hearing Decision", 104-119, 113.

there is no evidence to suggest Claimant was unable to ambulate effectively, ignoring evidence in the medical record as well as Claimant's own testimony at the May 15, 2015 hearing.[17]  Claimant provided evidence of her sleep apnea, testifying to the need for a B-PAP machine to allow her to safely sleep.[18]  As to impaired gas exchange, there is well documented evidence in the record that the Claimant required oxygen 24 hours a day and she appeared at the hearing on May 15, 2016 taking oxygen throughout the proceedings.[19]  Judge Lassiter also ignores in his analysis Claimant's multiple pulmonary emboli, edema, pulmonary hypertension and deep vein thrombosis which he himself refers to on page three of his own Decision.[20]  Claimant meets the requirements of step three.[21]

5.

Moving on to step four,[22] Judge Lassiter admits, after stating Claimant did not meet the requirements of step three for severity, that her medically determinable impairments could be expected to cause her alleged symptoms of acute physical pain, fatigue and drowsiness.[23]  However, Judge Lassiter states that Claimant was not entirely credible in her testimony at the May 15, 2015 hearing.[24]  His "evidence" that

---

[17] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 136.
[18] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 140.
[19] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 139.
[20] Doc # 7-3, "ALJ Hearing Decision", 104-119, 109.
[21] 20 CFR 404.1520(e).
[22] 20 CFR 404.1520(f).
[23] Doc # 7-3, "ALJ Hearing Decision", 104-119, 113.
[24] Doc # 7-3, "ALJ Hearing Decision", 104-119, 114.

Claimant's testimony was not credible included: that there was insufficient evidence in the record of her requiring a cane to ambulate, that medical evidence did not support her claims of shortness of breath and sleep apnea, that there was insufficient evidence of pulmonary emboli, that she gave clear and relevant responses to Judge Lassiter during the hearing and that she stated she needed 24 hour care from her husband but that he works 20 hours a week.[25]

Claimant needed a cane to enter the hearing room and leave on May 15, 2015. She has consistently used a cane since the onset of her impairments in December 2011.[26] The absence of mentioning her cane in some medical records in no way refutes her testimony. Judge Lassiter, in recounting medical records regarding Claimant's sleep apnea and shortness of breath, ignores the evidence in the medical record showing Claimant requires 24-hour use of oxygen, was prescribed first a C-PAP machine and then a B-PAP machine to sleep safely.[27] As to the pulmonary emboli there is clear evidence that Claimant sustained multiple emboli. In fact her own physician has stated on multiple occasions that she may not undergo surgeries that could relieve some of her other impairments because of the risk posed by having surgery while suffering from multiple pulmonary emboli.[28] Judge Lassiter seeks to penalize Claimant for answering his questions and Counsel's questions during the 45

---

[25] Doc # 7-3, "ALJ Hearing Decision", 104-119, 114.
[26] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 136 (Discussion of knee problems).
[27] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 141.
[28] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 133.

minute hearing. Claimant had been preparing for this hearing for over 21 months. Claimant's Counsel had impressed upon her the importance of being able to provide clear answers to the Court. There is no question Claimant made a herculean effort to answer questions knowing that providing clear answers would be imperative to a resolution of her Claim.[29] Yet Judge Lassiter holds this against her, as if being able to answer questions during a 45-minute hearing is proof she can do meaningful work of any kind. One supposes if Claimant had not given clear answers, Judge Lassiter would be stating her testimony did not corroborate the medical evidence and would be attempting to deny this claim upon that basis. Claimant stated she needed 24-hour per day care from her husband. She also testified that she would accompany him to his place of business so he would be available to help her if she has a medical emergency. There is nothing about her testimony that was inconsistent with her statement that she requires 24-hour per day care.

Judge Lassiter in exercising the mental gymnastics necessary to attempt to deny this claim, ignores the medical opinion evidence of Dr. Vester. Dr. Vester was appointed by Judge Lassiter to supplement the medical record. His examination was the most recent examination in the entire history of this case. And yet, because it conflicts with Judge Lassiter's tortured analysis of the rest of the record, he casts aside the expert medical opinion of the expert he appointed to examine the Claimant.[30] He

---

[29] "I'm sitting in here right now and I'm in terrible pain.", Doc # 7-3, "Transcript of Oral Hearing", 120-159, 143.
[30] Doc # 7-3, "ALJ Hearing Decision", 104-119, 114.

ignores medical opinion evidence provided by a second doctor contemporaneous with the hearing (May 2015) because the opinion was "vague" – there is nothing vague about an opinion being tendered that the Claimant cannot work due to her shortness of breath, pulmonary emboli and "spine/musculoskeletal disease" among other reasons. Judge Lassiter notes an opinion from May 2015 that raises concerns about Claimant's pulmonary emboli when only four paragraphs earlier he is arguing that there was nothing in the medical record raising this issue after October 2012.[31] Judge Lassiter also refers to a normal sleep study where again there is no such study in the record.

The only sedentary work even suggested by the Vocational Examiner at the hearing that Claimant could perform would be to work as a cashier or soldering boards.[32] Under questioning from Claimant's Counsel, he conceded that if Claimant was prone to falling asleep periodically due to her multiple impairments that she would not be able to perform either of these jobs.[33]

For all of these reasons, Judge Lassiter erred in finding that Claimant's impairments would still allow her residual functional capacity necessary to perform the full range of sedentary work. In fact, a fair reading of the medical record, including that supplied by experts the Claimant was directed to submit herself to for

---

[31] Doc # 7-3, "ALJ Hearing Decision", 104-119, 114.
[32] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 153.
[33] Doc # 7-3, "Transcript of Oral Hearing", 120-159, 156.

examination by Judge Lassiter, indicates she would not have the functional capacity necessary to perform even sedentary work.

6.

The evidence from the medical record and the Claimant's own uncontroverted testimony is that she cannot stand or sit for long periods, that she requires 24-hour care from her husband, that she needs oxygen on a constant basis to breathe normally, that she needs a B-PAP machine to facilitate her sleep and that she is in constant, serious pain due to the myriad of impairments she is suffering from to this day. She is disabled from performing any past relevant work[34] or any other work.[35]

7.

During the pendency of this matter, Claimant has also been diagnosed with a malignant cancer. Claimant is under active treatment at this time for this diagnosis in addition to the other ailments documented at the outset of her application for disability.

8.

Claimant is entitled to a reversal of Judge Lassiter's findings of fact and conclusions of law and an award of disability benefits to be made as allowed by

---

[34] 20 CFR 404.1520(e).
[35] 20 CFR 404.1520(f).

relevant federal law.[36]  In the event a rehearing is ordered, Claimant's Counsel respectfully requests that this case be assigned to another Administrative Law Judge. Judge Lassiter's outbursts at the May 15, 2015 hearing and Decision riddled with factual errors and contradiction demonstrates extreme personal bias in this case. Claimant's Counsel requests that if the Court cannot grant a reversal on the record before it, that, in the alternative, it remand for a rehearing before another Administrative Law Judge to lay to rest any concern about bias in rendering the decision.

WHEREFORE, premises considered, the Plaintiff prays for the following relief:

(a) A decision to award the Plaintiff disability status under the law;

(b) In the alternative, an Order that this matter be reheard by another administrative law judge; and

(c) For such other and further relief the Court deems just.

This 11th day of August, 2017.

MCKOON LAW FIRM

*/s/   Joshua R. McKoon*

By:   Joshua R. McKoon

---

[36] 42 U.S. Code § 405(g).

Georgia State Bar No. 495878

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF GEORGIA

# COLUMBUS DIVISION

| | | |
|---|---|---|
| PATRICIA C. COLEY, | * | |
| Plaintiff, | * | CIVIL ACTION FILE NO.: |
| v. | * | 4:17-00040-CDL-MSH |
| COMMISSIONER OF SOCIAL | * | |
| SECURITY, | * | |
| Defendant. | * | |

## CERTIFICATE OF SERVICE

Counsel for the Plaintiff hereby certifies he has served the foregoing on Counsel for the Defendant by the filing of same through the CM/ECF Electronic Filing System and by mailing a hard copy of same to Counsel for the Defendant at their address of record.

This 11th day of August, 2017.

**/s/ Joshua R. McKoon**

Counsel for Plaintiff